# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DOMINICK JOHANN TRICE,

        Defendant-Appellant.

UNPUBLISHED
March 19, 2015

No. 319079
Kent Circuit Court
LC No. 10-009849-FC

Before: M. J. KELLY, P.J., and MURPHY and HOEKSTRA, JJ.

PER CURIAM.

Defendant was convicted of two counts of armed robbery, MCL 750.529, one count of conspiracy to commit armed robbery, MCL 750.157a, and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to concurrent terms of 7 to 40 years' imprisonment for the armed robbery and conspiracy convictions and to a consecutive term of 2 years' imprisonment for the felony-firearm conviction. In *People v Trice*, unpublished opinion per curiam of the Court of Appeals, issued April 25, 2013 (Docket No. 309314), this Court affirmed defendant's convictions, except with respect to the felony-firearm conviction, which the Court found was not sufficiently supported by the evidence. This Court vacated the felony-firearm conviction and sentence, but did not remand the case for resentencing. However, defendant filed a motion for resentencing, arguing that the vacation of the felony-firearm conviction had a bearing on some of the offense variables relative to the scored offense of armed robbery. The trial court granted the motion. After a hearing, the trial court sentenced defendant to the same prison terms that had been previously imposed for the armed robbery and conspiracy convictions, 7 to 40 years' imprisonment. We affirm those sentences.

In the first appeal, this Court recited the facts of the case:

Defendant was charged and convicted of offenses arising from two armed robberies that occurred on the evening of August 22, 2010. On that night, defendant, Jamal Lee, and a man named "B" were expecting Amber Lucas, Whitney Kranz, and Candice McGraw to walk down an unlit sidewalk. The men concealed themselves and then simultaneously emerged from behind bushes when Lucas, Kranz, and McGraw approached. Defendant, Lee, and B confronted the women and demanded that they "give them everything." B displayed a long

-1-

shotgun while defendant searched the victims and robbed them of their property. B also removed property from Kranz. After the robbery, the men left the scene together in a burgundy vehicle. Defendant was found in a nearby residence later that night and was arrested after Lucas identified him. McGraw, . . . who knew defendant, Lee, and B, later disclosed their identity to the police. The jury convicted defendant of all the charged crimes. [*Trice*, slip op at 1.]

This Court ruled, in part, that "there was insufficient evidence for the jury to find that the defendant possessed a firearm during the course of the robberies." *Id.* at 2. The Court also observed, "In reaching our conclusion, we will not consider whether defendant's felony-firearm conviction could be supported on an aiding and abetting theory because the prosecution did not request, and the court did not give an instruction on, that theory." *Id.* at 3.

In this second appeal, defendant challenges the trial court's scoring of offense variable (OV) 1, MCL 777.31 (aggravated use of a weapon), OV 2, MCL 777.32 (lethal potential of the weapon used), and OV 9, MCL 777.39 (number of victims). We note that the trial court scored these offense variables with the same number of points as were scored for them at the original sentencing, and defendant agreed with those scores at that time, knowing full well that the trial testimony did not put a firearm in defendant's hands. While arguing in the first appeal that there was insufficient evidence establishing felony-firearm given the lack of evidence on possession, defendant did not appeal any of the scores on the offense variables. And again, this Court did not remand for resentencing, and we question the trial court's authority to entertain the motion for resentencing in the procedural posture of this case. See MCR 6.429(B) (indicating that a motion under MCR 6.500 *et seq.* would have been the only available procedural vehicle to mount a challenge on a claim of an alleged "invalid sentence"). Setting aside that concern and the possibility that defendant's arguments were waived under the circumstances, we shall proceed and address defendant's claims of error.

In *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), our Supreme Court provided clarification with respect to the appropriate evidentiary burden and standards of review associated with the scoring of the sentencing guidelines:

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo.

The trial court scored OV 1 at 15 points, which is the proper score if "[a] firearm was pointed at or toward a victim." MCL 777.31(1)(c). In this case, there was abundant evidence that a firearm was pointed at or toward the victims; the statutory language does not express that it need be the offender being scored who pointed the firearm at or toward a victim during the scored criminal offense in which the offender participated.

With respect to OV 1, MCL 777.31(2)(b) provides that "[i]n multiple offender cases, if 1 offender is assessed points for the presence or use of a weapon, all offenders shall be assessed the same number of points." Defendant argues that his accomplices have not been caught,

prosecuted, and scored for purposes of sentencing, but this did not preclude the trial court from scoring 15 points for defendant under the plain and unambiguous language of MCL 777.31(1)(c). The trial court, acknowledging that defendant did not possess the firearm, stated that the multiple-offender language in MCL 777.31(2)(b) reflects "a recognition of aiding and abetting." We agree, given that had defendant's gun-toting accomplice been convicted of armed robbery and scored 15 points for OV 1 for pointing the firearm at the victims, followed by defendant's convictions and sentencing, the trial court would have been mandated to score 15 points for defendant under MCL 777.31(2)(b), despite the fact that defendant did not actually possess the firearm. But again, the trial court was not barred from scoring 15 points for OV 1 simply because defendant's accomplices had not yet been prosecuted, considering that the criminal transaction involved a firearm being pointed at or toward a victim, MCL 777.31(1)(c). Subsection 2(b) of MCL 777.31 merely reinforces this conclusion because it does suggest that a score of 15 points is proper even when a defendant did not possess the firearm being pointed at a victim. To rule otherwise would make the sequence or timing of prosecutions and sentencings in multiple-offender situations a defining characteristic in regard to what score a defendant receives on OV 1, which clearly was not the intent of the Legislature.

The law of the case doctrine and our Supreme Court's order in *People v Johnston*, 478 Mich 903; 732 NW2d 531 (2007), do not dictate a different holding. With respect to the law of the case doctrine, the Michigan Supreme Court in *Grievance Administrator v Lopatin*, 462 Mich 235, 259-260; 612 NW2d 120 (2000), observed:

> Under the law of the case doctrine, "if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." The appellate court's decision likewise binds lower tribunals because the tribunal may not take action on remand that is inconsistent with the judgment of the appellate court. Thus, as a general rule, an appellate court's determination of an issue in a case binds lower tribunals on remand and the appellate court in subsequent appeals. [Citations omitted.]

The legal question passed on in the first appeal concerned whether there was sufficient evidence to prove beyond a reasonable doubt that defendant possessed a firearm for purposes of the felony-firearm charge and conviction. Whether there was a preponderance of evidence showing that "[a] firearm was pointed at or toward a victim," MCL 777.31(1)(c), for purposes of scoring the sentencing guidelines is *an entirely different legal question*. Furthermore, OV 1 simply does not require possession and the pointing of a firearm by the defendant who is being scored under OV 1, where there were other persons engaged in the offense for which the defendant was being scored, one or more of whom possessed and pointed a firearm at a victim. Additionally, the fact that the prosecution did not proceed under an aiding and abetting theory at trial does not mean that aiding and abetting concepts cannot be employed in scoring OV 1 during sentencing; again, these are *entirely distinct legal issues*.

In *Johnston*, 478 Mich at 903-904, the Michigan Supreme Court ruled as follows in its order:

We reverse that part of the Court of Appeals decision analyzing defendant's sentence and we remand this case to the Wayne Circuit Court for resentencing. The sentencing court in this case scored defendant's offense variables 1, 2, and 3 identically to the scores given to his co-defendants because each of these variables directs that for "multiple offender cases," if one offender is assessed points under the variable, "all offenders shall be assessed the same number of points." MCL 777.31(2)(b); MCL 777.32(2); MCL 777.33(2)(a). However, defendant was the only offender convicted of larceny from the person and conspiracy to commit larceny from the person [co-defendants had robbery convictions]. Thus, his was not a "multiple offender case" for either of these crimes. Accordingly, the multiple offender provision does not apply to the scoring of defendant's guidelines in this case. See *People v Morson*, 471 Mich 248, 260 n 13; 685 NW2d 203 (2004).

*Johnston* merely stands for the proposition that if a trial court relies on the multiple-offender rule to score an offense variable for a defendant in a multiple-offender situation, making the score consistent with the score given an earlier-sentenced co-defendant, the underlying convictions for both defendants must be for the same offense. Here, no other individuals had been prosecuted or sentenced, so *Johnston* is irrelevant. The trial court did not score 15 points for defendant on the basis that the multiple-offender rule of MCL 777.31(2)(b) dictated that score, absent any other basis existing for the score; rather, the court recognized that the multiple-offender rule merely suggested that the scoring of OV 1 could entail an aiding and abetting rationale. And we reiterate that a score of 15 points for OV 1 is proper if "[a] firearm was pointed at or toward a victim," MCL 777.31(1)(c), and indeed a firearm was pointed at the victims during the criminal transaction as reflected in the trial testimony.

Our holding finds support in *People v Libbett*, 251 Mich App 353; 650 NW2d 407 (2002). In *Libbett*, the defendant pointed a gun at the victim's head during a carjacking, while the defendant's accomplice hit the victim. The defendant's accomplice pled guilty and was scored only 5 points for OV 1 at his sentencing, and the defendant was subsequently convicted and sentenced. The defendant in *Libbett*, like our defendant here, was given 15 points for OV 1, and he argued on appeal that he should have been given the same 5-point score as his accomplice in light of MCL 777.31(2)(b). This Court rejected the defendant's argument, ruling:

> When reading MCL 777.31 in its entirety, it is clear that the Legislature intended for the sentencing courts to first accurately determine the highest number of points that are to be scored under MCL 777.31(1)(a)-(e) and then to assess the same number of accurately scored points to multiple offenders in the same case under MCL 777.31(2)(b). If we were to read subsection 2(b) in isolation, as defendant suggests, then we would not be giving effect to subsection 1, which requires that the court first accurately score the offense variable by assigning the defendant the highest number of attributable points that apply. In this case, however, *it is undisputed that the five points initially assessed to [the defendant's accomplice] were scored incorrectly because both parties and the trial court recognized that the proper score under MCL 777.31(1) and the facts of this case would be fifteen points*. Accordingly, we hold that [the accomplice's] erroneous score for OV 1 did not statutorily bind the trial court under MCL 777.31(2)(b) to

assess the same erroneous score for defendant in this case. [*Libbett*, 251 Mich App at 367 (emphasis added).]

The accomplice in *Libbett*, who was not the person pointing the gun at the victim during the carjacking, stood in the very same position as defendant does here, and the *Libbett* panel made absolutely clear that the accomplice, despite not possessing the gun and pointing it at the victim, should still have been scored the full 15 points for OV 1. Accordingly, defendant was properly scored 15 points in this case, where "[a] firearm was pointed at or toward a victim," MCL 777.31(1)(c).

The trial court scored OV 2 at 10 points, which is the proper score if "[t]he offender possessed or used a short-barreled rifle or a short-barreled shotgun." MCL 777.32(1)(c). This language specifically speaks of the "offender" possessing the weapon, and MCL 777.32(2) contains a multiple-offender rule comparable to that in OV 1. For the reasons explained below, we find it unnecessary to address OV 2 in this appeal.

Next, the trial court scored OV 9 at 10 points, which is the proper score when "[t]here were 2 to 9 victims who were placed in danger of physical injury or death[.]" MCL 777.39(1)(c). A trial court is directed to "[c]ount each person who was placed in danger of physical injury or loss of life[.]" MCL 777.39(2)(a). Here, there was overwhelming evidence that three victims were placed in danger of physical injury or death during the robbery. And while the victims were placed in danger of injury or death most directly from the use of the firearm wielded by one of defendant's accomplices instead of defendant himself, the plain and unambiguous language of OV 9 does not make that distinction meaningful. The trial court properly scored 10 points for OV 9.

Assuming without concluding that OV 2 should have been scored at zero points as claimed by defendant instead of the 10 points that was actually scored, this would reduce defendant's total OV points from 35 to 25, keeping him at the same OV level that he was already at with the 10-point score for OV 2, which is level II (20 to 39 point range). MCL 777.62. Because scoring zero points for OV 2 would not alter the minimum sentencing range, resentencing is not necessary. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006) ("Where a scoring error does not alter the appropriate guidelines range, resentencing is not required.").

Affirmed.

/s/ Michael J. Kelly
/s/ William B. Murphy
/s/ Joel P. Hoekstra